# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SUZANN R. LAWSON, | Case No. 1:20-cv-324 |
| Plaintiff, | McFarland, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

In October 2016, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on June 1, 2016 due to a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On December 12, 2018, Plaintiff appeared with counsel in Dayton, Ohio and gave testimony before ALJ Stuart Adkins. A vocational expert also testified. (Tr. 30-66).

Plaintiff was 46 years old on the date of her alleged disability, but had moved from the "younger individual" age category to the "closely approaching advanced age" category

1

by the date of the ALJ's decision. Plaintiff has a high school degree. She is divorced and lives by herself in a two-story home. She has past relevant skilled work as an administrative clerk, an insurance sales agent, a service clerk and as an inside sales agent, all of which are classified as either semi-skilled or skilled jobs at the light exertional level, but that Plaintiff actually performed at the sedentary exertional level.

On February 27, 2019, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 12-23). The ALJ determined that Plaintiff has severe impairments of: "obesity, migraines, diabetes mellitus (type II), irritable bowel syndrome, fibromyalgia, degenerative disc disease (lumbar/cervical), diverticulitis, neuropathy, obstructive sleep apnea." (Tr. 14). Although Plaintiff had alleged that she was also disabled due to anxiety and depression, the ALJ determined that those impairments are not severe. (Tr. 15). In this judicial appeal, Plaintiff does not challenge the ALJ's findings concerning which impairments were severe, nor does she dispute the determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

Notwithstanding her multiple impairments, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, subject to the following additional limitations:

> (1) limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; (2) limited to standing and/or walking for about six hours in an eight-hour workday; (3) limited to sitting for six hours in an eight-hour workday; (4) must be permitted to alternate between sitting and standing every 20 minutes while at the workstation; (5) can never climb ladders, ropes, and scaffolds; (6) can occasionally climb ramps and stairs, kneel, crouch, and crawl; (7) can frequently balance; (8) should avoid concentrated exposure to extreme cold and vibration; (9) should avoid exposure to unprotected heights.

2

(Tr. 16). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform <u>all</u> of her past relevant work. (Tr. 21). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred in evaluating the medical evidence and Plaintiff's subjective symptoms, and consequently erred in determining that she could perform past relevant work with her RFC as determined. I find no reversible error.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

3

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

B.  **Plaintiff's Claim of Error**

Plaintiff's Statement of Errors sets forth a single claim: "The ALJ Reversibly Erred in Evaluating the Medical Evidence and Lawson's Symptom Severity and RFC." (Doc. 11 at 5). Her claim focuses primarily on two of her physical impairments, fibromyalgia and diverticulitis, with no reference at all to her mental impairments or to most other physical impairments. The undersigned will limit discussion of the relevant physical evidence accordingly. Under the umbrella of her single claim, Plaintiff's Statement includes several distinct arguments. For the convenience of the Court, each of those arguments is discussed separately.

**The ALJ's Evaluation of Plaintiff's Fibromyalgia is Substantially Supported**

Plaintiff devotes most of her argument to her contention that the ALJ improperly evaluated her fibromyalgia. It is undisputed that Plaintiff was first diagnosed with fibromyalgia in June 2010. Plaintiff points to what could be viewed as a factual misstatement by the ALJ when he refers to a record of fibromyalgia being "diagnosed in August 2018 without tender points being evaluated with that diagnosis." (Tr. 19). A clinical diagnosis of fibromyalgia relies in part on the identification of and location of tender points; the 2010 record of initial diagnosis documented that criteria.[1] The ALJ's statement is accurate insofar as no additional examination of tender points is referenced in the 2018 record. However, the statement is ambiguous. While the ALJ does not refer to the 2018 record as the <u>first</u> diagnosis of fibromyalgia, neither does he reference the original diagnosis made eight years earlier.[2] On the other hand, the consulting physicians on

---

[1]The June 2010 record shows that Plaintiff exhibited 15 out of 18 fibromyalgia tender points. (Tr. 733-736).
[2]At the hearing, Plaintiff's counsel stated that Plaintiff was diagnosed with fibromyalgia in 2014. (Tr. 35).

5

whose 2016 and 2017 reports the ALJ heavily relied refer to Plaintiff's existing fibromyalgia as a severe impairment throughout the disability period.

The undersigned considers any misstatement of the date of Plaintiff's first fibromyalgia diagnosis to be – at most – harmless error. Notably, Plaintiff does not allege the onset of disability until June 2016 - six years after that initial fibromyalgia diagnosis. (Tr. 735). The diagnosis was never questioned by either the consulting agency physicians or the ALJ, all of whom considered Plaintiff's fibromyalgia to be a "severe" impairment throughout the disability period.

Apart from the ambiguous statement of her diagnosis date, Plaintiff complains chiefly that the ALJ's non-disability determination "stems from [a] fundamental misunderstanding of fibromyalgia," (Doc. 11 at 5, internal citations omitted), suggesting that the ALJ over relied on objective tests in determining either the existence of, or severity of, Plaintiff's fibromyalgia. I find no error. In the cases cited by Plaintiff, the ALJs rejected claims that fibromyalgia was a "severe" impairment at Step 2 of the sequential analysis, based upon their mistaken reliance on objective tests. *See Kalmbach v. Com'r of Soc. Sec.*, 409 Fed. Appx. 852, 859 (6th Cir. 2011) (reversing based upon "gaping" hole in ALJ's analysis including a failure to identify fibromyalgia as a severe impairment and overreliance on objective tests); *Rogers v. Com'r*, 486 F.3d 234, 243 (6th Cir. 2007) (same). By contrast, the ALJ here had no qualms about finding fibromyalgia to be a "severe" impairment at Step 2.

More importantly, the ALJ's remaining sequential analysis of Plaintiff's fibromyalgia is substantially supported. Unlike in *Kalmbach* and *Rogers*, the ALJ here relied primarily on clinical examination records and other evidence; he did not mistakenly rely upon objective tests to discredit Plaintiff's diagnosis or symptoms. For example, at Step 3, the

6

ALJ recognized that there is no Listing for fibromyalgia but that fibromyalgia may equal or medically equal a Listing, such as inflammatory arthritis, under certain circumstances. In evaluating Plaintiff's symptom severity as less than disabling, the ALJ explained:

> [T]he record does not document an inability to ambulate effectively or the inability to perform fine and gross movements effectively, as set forth in 14.09(A). The record also does not show the requisite constitutional symptoms (severe fatigue, fever, malaise, or involuntary weight loss) with marked limitation of daily activities, marked limitation in social functioning, or marked limitation in task persistence, as described in 14.09(D). The claimant's fibromyalgia also does not produce the signs or findings needed to equal the criteria of any other Listing….

(Tr. 15). In contrast to the constitutional symptoms that make up Listing-level severity, such as weight loss, the ALJ pointed out that Plaintiff is morbidly obese at 260 pounds and has not heeded weight loss advice "or taken any sufficient steps toward achieving her weight loss goals." (Tr. 18). The ALJ clearly focused on clinical findings, pointing out that Plaintiff's gait and station have been routinely found to be normal on exam, as have her joints, muscles and bones, with normal movement of all extremities. (*Id.*)

As evidence that her fibromyalgia was disabling, Plaintiff cites to a record dated April 10, 2018 in which a treating physician, Dr. Melvin, described her fibromyalgia as "uncontrolled" due to ineffective medication management at that time. (Tr. 665). In context, that single record reflects Plaintiff's request for a medication change, but does not undermine the ALJ's analysis that Plaintiff is not disabled from her fibromyalgia. When she first established care with Dr. Melvin two months earlier on February 15, 2018, Dr. Melvin noted that Plaintiff reported that she "takes gabapentin and requires [sic] or she hurts all over." (Tr. 648). At her February visit, Dr. Melvin reviewed all of Plaintiff's medications "in depth" and recommended no changes based upon the effectiveness of her medications "at this time." (Tr. 652).

The notation that Plaintiff's fibromyalgia was "uncontrolled" two months later appears in documentation of a telephone encounter on April 10, 2018[3] in which Plaintiff asked Dr. Melvin for an "alternate" medication after complaining that "recently" she had been "miserable." (Tr. 661). During that same encounter, Plaintiff admitted that she had not been exercising "and realizes she needs to." (*Id*.) In other words, the record strongly suggests that Plaintiff's fibromyalgia (which Plaintiff herself admits was not disabling for at least six years after her diagnosis) was sufficiently controlled through February 2018 and worsened only "recently" to her April 10, 2018 call. Dr. Melvin responded to Plaintiff's request by suggesting savella but noted that drug would require a prior authorization which "[h]opefully we can get…through [insurance]." (Tr. 665). Presumably as part of documenting medical necessity for insurance, Dr. Melvin notes that Plaintiff's fibromyalgia is (as of that visit) "uncontrolled" with "failed" management on other medications. The record continues:

> [D]iscussed that physical activity is a MUST for fibromyalgia. Will make referral for aquatic therapy. She does not want to go to the Drake Center. She instead wants to go to Atrium.

(*Id*.) The ALJ discussed the same clinical record on which Plaintiff relies, noting Plaintiff's admission that she had decreased her exercise and felt "miserable." (Tr. 19, citing Tr. 661). However, the ALJ reasonably pointed out that "she did not follow through" with the April referral to physical therapy and admitted to Dr. Melvin in her next visit "that she needed to exercise more consistently." (Tr. 19, citing Tr. 665 and Tr. 706 (6/1/18 note that "Back in April we ordered PT but she never went" and "is not exercising")).

Plaintiff also points to a subsequent physical therapy evaluation on August 20,

---

[3]The April 10, 2018 record states that the encounter was by telephone.

8

2018 at which the physical therapist ("PT") found impaired posture and "[i]mpaired joint mobility, motor function, muscle performance and range of motion associated with connective tissue dysfunction and localized inflammation." (Tr. 629). But those diagnostic findings were made at the initial visit, prior to the commencement of therapy, and reveal nothing about the level of functional impairment before or after treatment. In fact, the PT stated that Plaintiff was a "good candidate" for treatment to address all of her deficits. (*Id.*)[4] Last, Plaintiff points to a phrase in the same evaluation that states: "Fibromyalgia Impact Questionnaire 83.29% disability." (Tr. 629). Apart from the fact that the ALJ was not required to accept Plaintiff's subjectively reported limitations, the calculation of disability is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d) (Evaluating opinion evidence for claims filed before March 27, 2017). As discussed below, the ALJ reasonably discounted Plaintiff's subjectively reported symptoms because they were inconsistent with other substantial evidence in the record.

**The ALJ's Evaluation of Plaintiff's Diverticulitis is Substantially Supported**

Plaintiff next argues that the ALJ "failed to consider or even address" a potential closed period of disability dating from June 2016 through July 2018, based upon Plaintiff's diverticulitis symptoms during that period of time. Plaintiff's counsel raised this issue at the hearing:

> I wanted to mention potentially a closed period of time based on the diverticulitis and I was looking at 6/1/16 through probably July of 2018 and that would be a couple of months after she had the colostomy reversed... And then just to point us in the evidence to get back to June of '16 because she didn't have that first procedure until the end of 2017, but there was a CT scan in July of '15. That's at 12F, 26. That was showing diverticulitis, one of the episodes, and then her PCP notes at 1F and 7F talk about the acute episodes she was having in early 2016.

---

[4]In addition, the ALJ considered and referenced the same PT evaluation record. (*See* Tr. 19, citing Tr. 633).

9

(Tr. 37-38).

The undersigned finds the ALJ's analysis of the entirety of the record – including but not limited to the proposed "closed period" – to be well supported. In her appeal to this Court, Plaintiff concedes that the ALJ discussed all relevant records and "generally summarized" all of the relevant evidence pertinent to the alleged closed period, including that Plaintiff underwent surgery for her recurrent sigmoid diverticular disease and experienced post-surgery complications including retraction of her ostomy, ultimately undergoing a colostomy closure procedure in May 2018. (Doc. 11 at 8; *see generally* Tr. 19, citing Tr. 426-427 and Tr. 857-64). The state agency physicians considered much of the same evidence, and also did not find evidence of a closed period of disability. (Tr. 67-69, 81-94). In addition, none of the physicians who treated Plaintiff during the relevant period recommended any significant limitations or restrictions of Plaintiff's activities.

Having conceded that the ALJ addressed all relevant evidence, Plaintiff is left arguing that the ALJ "failed to <u>really</u> explain or consider why Lawson's symptoms and surgeries during this time were not disabling." (Doc. 11 at 8, emphasis added). But this type of "the ALJ should have said more" error is not grounds for reversal on the record presented.

> [Plaintiff] appears to be asserting that the ALJ was required to use "magic words" and specifically indicate that a closed period of disability had been considered and rejected. No law exists to support this assertion.

*Sielaff v. Commissioner of Social Sec.*, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012). Because it is clear that the ALJ considered all of the medical evidence that related to the closed period, his conclusion that Plaintiff was not disabled clearly includes a finding that she was not entitled to a closed period of disability. *Id*.

10

**The ALJ's Evaluation of Plaintiff's Subjective Complaints**

Although Plaintiff devotes little space in her brief to directly attacking the ALJ's "credibility" or "consistency" analysis,[5] it is clear that her disagreement with the ALJ's adverse evaluation of her subjective complaints is central to her claim of error. (*See* Doc. 11 at 8, arguing that "[t]he ALJ's finding that Lawson can perform her skilled and semi-skilled past work is unreasonable and unrealistic in light of her chronic pain and other impairments and symptoms."). Ultimately, the ALJ concluded that Plaintiff's records "do not support the claimant's claims of disabling pain." (Tr. 18). In support of that conclusion, the ALJ pointed out many inconsistencies among the medical records, and also discussed Plaintiff's relatively conservative (non-surgical) treatment for back, neck, and tailbone pain, including March 2017 records that showed only moderate tenderness in Plaintiff's cervical, thoracic and lumbosacral paraspinal muscle areas. (*Id.*) In addition, the ALJ found Plaintiff's description of her daily activities to be "inconsistent with her complaints of disabling symptoms and limitations." (Tr. 19).

In this appeal, Plaintiff briefly argues that her strong work history "should weigh in favor of according her symptom severity complaints substantial weight." (Doc. 11 at 8, citations omitted). However, work history is only one among many factors that an ALJ may, but is not required to consider in the evaluation of subjective complaints. *See*

---

[5]For claims filed after March 2016 like this one, SSR 16-3p is the operative rule. In SSR 16-3p, the Agency removed the word "credibility" from an earlier rule (SSR 96-7p), and refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). SSR 16-3p emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. The elimination of the word "credibility" in the revised rule can be semantically awkward since virtually all of the prior case law uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

generally, *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Dutkiewicz v. Com'r of Soc. Sec.*, 663 Fed. Appx. 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss Dutkiewicz's work history when assessing his credibility…."). Based upon the totality of the record presented, the undersigned finds the ALJ's analysis of Plaintiff's subjective complaints to be substantially supported.

As the ALJ pointed out, Plaintiff lives alone in a two-story home. She testified that she is considering selling it, but admitted that she is able to get up and down the stairs as long as she takes her time. (Tr. 39). Plaintiff performs all necessary housework including laundry and sweeping. However, she testified that her two adult daughters occasionally come over to assist her. (Tr. 49). She testified she works for a couple of hours each day on her eBay store, up to 15 hours per week. (Tr. 47). She cooks for herself, pays bills, and drives three times per week, shops one or two times per week, bathes regularly and watches television for eight to ten hours per day. (*Id.*) She can read, write and manage her own funds. (Tr. 40). Plaintiff testified that she can drive but not for "long periods" because her "sitting limits are about two to four hours." (Tr. 39, 48). She testified she can stand for 15-20 minutes. (Tr. 48). She testified that lifting more than ten pounds will "aggravate" her back. (Tr. 49).

Throughout his opinion, the ALJ pointed to multiple inconsistencies, such as Plaintiff's repeated failure to follow treatment recommendations and mental health records that did not support *any* severe impairments. In addition, the ALJ remarked that Plaintiff's myriad activities (including running an eBay business) were not fully consistent with her allegations of disability.

> She uses the computer (i.e., Facebook and Google) daily. She is able to attend doctor's appointments on her own and maintains contact with her family. She does crafts in her free time, particularly around Halloween and Christmas. She enjoys scrapbooking and talking on the phone. …Clearly,

12

> the claimant leads a very normal home life, and is able to attend to all of her basic needs and engage in hobbies and self-care tasks.

(Tr. 19-20).

"Discretion is vested in the ALJ to weigh all the evidence," and the ALJ here did not abuse that discretion. *Collins v. Com'r of Soc. Sec.*, 347 Fed. Appx. 663, 668 (6th Cir. 2009) (internal quotation marks and citation omitted). The record strongly supports the ALJ's finding that Plaintiff's subjective symptoms, including but not limited to pain complaints, were not disabling. While Plaintiff asserts that the evidence should have been weighed differently, it was the ALJ's duty to resolve conflicting evidence, and a court may not reweigh the evidence.

**The ALJ's Formulation of Plaintiff's RFC is Substantially Supported**

Having determined that the ALJ's analysis of the medical records and of Plaintiff's subjective complaints are both substantially supported, the undersigned turns to Plaintiff's final argument: that the ALJ erred in assessing her RFC. Again, I find no error.

At Step 4 of the sequential analysis, the ALJ determined that Plaintiff retains a residual functional capacity that would permit her to perform all of her past relevant work. Plaintiff accuses the ALJ of interpreting raw medical data to formulate her RFC. However, the ALJ expressly relied upon the medical opinions of agency consultants who opined that Plaintiff was capable of a reduced range of light exertional work consistent with the RFC as determined. (Tr. 21, citing the opinions of Drs. Sutherland and Conghalay dated 12/8/16 (Tr. 79) and 5/1/17 (Tr. 91)). The consulting physicians reviewed medical records through the date of their respective opinions, considering multiple impairments including but not limited to Plaintiff's severe fibromyalgia, her diverticulitis symptoms, and imaging studies showing degenerative changes in Plaintiff's spine. (Tr. 86-87). Based upon additional medical evidence submitted after Dr. Conghaley's May 2017 date of review,

13

the ALJ added a limitation to allow Plaintiff to alternate positions between sitting and standing in order to account for any additional "degenerative disc changes and any residuals associated therewith." (Tr. 21).

Arguing that this Court should reverse for further additional review by a qualified medical expert, Plaintiff points to x-rays of her cervical spine dated November 12, 2018 that no physician translated "into functional terms" before the ALJ. (Doc. 11 at 6). The x-ray was taken a month prior to Plaintiff's hearing; the ALJ held the record open for receipt of the x-ray report and other post-hearing records prior to issuance of his opinion. The subject x-ray report includes the following findings:

> The craniocervical junction is intact. There is mild reversal of the normal cervical lordosis with minimal retrolisthesis at C6-7. Vertebral body heights are maintained.
>
> Degenerative disc disease is noted at C6-7 with moderate disc space narrowing and mild hypertrophic changes. The remainder of the disc spaces appear preserved.

(Tr. 1004). The report concludes with an impression of "Degenerative disc disease at C6-7 with moderate disc space narrowing, mild hypertrophic changes and minimal retrolisthesis." (*Id.*) Notably, a follow-up MRI dated December 2018 was discussed by the ALJ in his opinion. Consistent with the referenced x-ray, the MRI showed mostly "mild" findings including "multilevel cervical degenerative disc disease, most evidence at C5-6 and C6-7 with mild canal narrowing at C6-7" but with "no significant cord compression or cord signal abnormality." (Tr. 18).

The undersigned finds no basis to remand for additional review of the x-ray study, and concludes that the ALJ's determination was appropriately based on the record as a whole including the consultative medical opinion evidence. "It is well-settled that 'the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's

14

testimony to form an assessment of [the claimant's] residual functional capacity.'" *Evans v. Com'r of Soc. Sec.* 2019 WL 3927507, at *9 (S.D. Ohio Aug 20, 2019) (quoting *Coldiron v. Com'r of Soc. Sec.,* 391 Fed Appx. 435, 439 (6th Cir. 2010) (additional citations omitted)).

The handful of cases cited by Plaintiff are distinguishable, and/or do not represent the view of this Court. For example, in *Deskin v. Com'r of Soc. Sec.*, 605 F. Supp.2d 908, 914-915 (N.D. Ohio 2008), the plaintiff's primary impairment was a significant back impairment. The *Deskin* court reversed after determining that the ALJ had inappropriately evaluated more than two years of complex medical evidence from the Cleveland Clinic without seeking either a consultative opinion or medical expert testimony, and giving only "passing mention" to an early opinion of an agency consultant without discussing the functional limitations he proposed. Arguably, the instant case is factually distinguishable. Here, Plaintiff did not allege disability based on neck pain,[6] but instead based her disability claim on a constellation of physical and mental conditions including chronic pain, migraines, irritable bowel syndrome, obesity, fibromyalgia, neuropathy, anxiety and depression. (Tr. 16; *see also* Tr. 214, 221). Unlike in *Deskin*, virtually all of Plaintiff's impairments were considered by the consulting physicians and the ALJ discussed their specific functional opinions at some length. (Tr. 21).

---

[6]Before this Court, Plaintiff limits her argument about the 2018 x-ray to a claim that the ALJ was required to have a medical source "translate" it into functional terms. Although Plaintiff does not argue that her neck pain alone was disabling, it is worth noting that the record would not support that contention. Plaintiff treated with a chiropractor beginning in March 2017. His notes refer to an earlier cervical x-ray study that similarly showed "Mild reversal lordosis …[and] Anterior C6 calcification disc space with mild osteophytosis." (Tr. 753). Plaintiff consistently reported that the chiropractic treatments were effective in improving her neck pain in March, April and June 2017 (Tr. 750, 754, 757). Although she reported an increase in "moderate" neck pain in late July and August of 2018, that increase in pain occurred after she spent "3-4 hours on a Harley [motorcycle]." (Tr. 737, 739). The chiropractor prescribed a cervical posture pump to reduce Plaintiff's symptoms but Plaintiff told him that she only used it once. (Tr. 742, 741).

In addition to factual differences, *Deskin* has been criticized by nearly two dozen cases, including this Court. *See, e.g. Evans, supra* at *8; *Williams v. Astrue*, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20, 2012) ("But RFC is for the ALJ to determine, *see* 20 C.F.R. § 416.945(a); and *Deskin* "is not representative of the law established by the legislature, and [as] interpreted by the Sixth Circuit Court of Appeals.") (additional citation omitted). Two other cases relied on by Plaintiff also are easily distinguished because they involved an ALJ's rejection of medical opinion evidence favorable to the Plaintiff. By contrast, no such evidence exists here. *See, e.g.*, *Smiley v. Com'r of Soc. Sec.*, 940 F. Supp.2d 592, 599-600 (S.D. Ohio 2013) (holding that an ALJ's RFC finding of "medium" work after rejecting the more limiting opinions of the agency consultants and a treating physician was unsupported); *Mitsoff v. Com'r of Soc. Sec.*, 940 F. Supp.2d 693, (S.D. Ohio 2013) (holding that the ALJ improperly rejected the opinion of the plaintiff's treating physician).

In short, the RFC as determined is substantially supported. Because the hypothetical RFC formulated by the ALJ is supported by the record, the vocational expert's testimony that such an individual can engage in her prior relevant work constitutes substantial evidence to support the non-disability determination. *See Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED**.

                                           */s Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| SUZANN R. LAWSON, | Case No. 1:20-cv-324 |
| Plaintiff, | McFarland, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).